Louis J. MARTINO and McDonald's Drive-In of Ottumwa, Iowa, Inc., Plaintiffs,

v.

McDONALD'S SYSTEM, INC., and Franchise Realty Interstate Corporation, Defendants.

No. 75 C 3455.

United States District Court, N. D. Illinois, E. D.

May 18, 1977.

Judson H. Miner, Charles Barnhill, Jr., Davis, Miner & Barnhill, Chicago, Ill., for plaintiffs.

Earl E. Pollock, Gary Senner, Louis C. Keiler, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

Before the court is the defendants' motion to dismiss or for summary judgment on plaintiffs' complaint alleging violations of the federal antitrust laws. In count I of the complaint, Martino and the corporate plaintiff McDonald's of Ottumwa challenge a provision of the McDonald's System franchise agreement prohibiting acquisition of financial interest in competing self service food establishments without consent of the franchisor. Count II of the plaintiffs' complaint challenges a rebate arrangement between defendant McDonald's Systems and Coca-Cola Corporation.

■ The threshold issues to be resolved concern the standing and capacity of the individual and corporate plaintiffs. Plaintiff Martino was a franchisee of defendant McDonald's Systems on an agreement executed in June of 1962. That franchise was not assigned to plaintiff McDonald's of Ottumwa, and plaintiff Martino retained the interest in the franchise individually.[1] Although the allegations of the complaint are less than clear as to the capacity in which plaintiff Martino is seeking relief, the complaint arguably states a claim by plaintiff in his individual capacity as franchisee. Accordingly, the authority relied upon by defendants holding that an individual shareholder lacks standing to sue for alleged antitrust violations which merely affect the value of his shares is inapplicable. *See e. g., Vincel v. White Motor Corp.*, 521 F.2d 1113 (2d Cir. 1975).

■ The question of the capacity of the corporate plaintiff, McDonald's of Ottum-

wa, is more complex. It appears that the corporation was organized to operate the franchise owned by the individual plaintiff. McDonald's of Ottumwa did not hold the franchise as a corporate asset. However, by the loss of the franchise, the shares of McDonald's of Ottumwa were allegedly adversely affected. Thus it is arguable that the corporation, although not the franchisee, may establish some basis for a claim against defendants for the alleged antitrust violations. The difficulty for the corporate plaintiff is not one of standing, rather it is one of capacity. It is uncontested that the corporate plaintiff's certificate of incorporation was cancelled by the Iowa Secretary of State on November 22, 1974 pursuant to Iowa law. This suit was commenced in October of 1975 at which time the plaintiff corporation lacked capacity to sue under Iowa law. In April of 1976 plaintiff reacquired corporate capacity, and the certificate of cancellation was revoked. The federal rules require that corporate capacity be determined with reference to the state of domicile, thus in the instant case, the law of the state of Iowa must be examined.

The controlling Iowa statute provides that "the cancellation of the certificate of incorporation of a corporation shall not take away or impair any remedy available to or against such corporation . . . for any right or claim existing or any liability incurred prior to such cancellation, but no action or proceeding thereon may be prosecuted by such corporation until it shall have been reinstated." Iowa Code Ann. ch. 496A, § 130. The language of this section indicates that the corporate plaintiff lacked legal capacity to sue at the time this action was commenced, and the defendants argue that Iowa law holds that subsequent reinstatement of the certificate of incorporation is ineffective to retroactively restore capacity to the corporate plaintiff in this action. Defendants' argument is predicated on *Hearth Corp. v. CBR Development Co., Inc.*,

---

1. Although this statement is contrary to the allegations of the complaint, both parties agree that the franchise was not validly assigned to the plaintiff corporation. For purposes of simplicity the court will examine the issues in this factual context, assuming that an appropriate amendment to the complaint will be forthcoming.

210 N.W.2d 632 (1973) in which the Iowa Supreme Court interpreted the provisions of this statute to preclude a corporation which reacquired a certificate of incorporation from enforcing a contract which was executed during the time of corporate disability prior to reinstatement. The Iowa statute does not affect the validity of actions which predate cancellation or postdate reinstatement. Rather it affects the enforcibility of transactions entered into during the cancelled period as in *Hearth*. Thus the court in *Hearth* did not reach the issue of reacquisition of capacity on the maintenance of an action which is itself enforcible because it arose during the precancellation period. That precise issue was examined by an Iowa district court eight months prior to the *Hearth* decision in *Stutzman Feed Service Inc. v. Todd & Sargent Inc.*, 336 F.Supp. 417 (S.D.Iowa 1972) and the district court specifically directed its statutory interpretation to the section of the code governing the instant action. In *Stutzman*, the district court reasoned that the reinstatement related back to the date of cancellation and that reinstatement after commencement of an action by a cancelled corporate plaintiff would suffice to establish capacity to continue to maintain the action. The *Hearth* case did not cite *Stutzman*, and there is no indication in that opinion that the court was interpreting the "no action or proceeding thereon may be prosecuted . . . until it shall have been reinstated" provision of the Iowa code. The issue in *Hearth* was the enforcibility of a contract executed by the cancelled corporation, and the holding that reinstatement did not validate the contract need not dictate dismissal of the reinstated corporate plaintiff in this federal action. Admittedly the rationale for *Stutzman*, that the code contemplated an uninterrupted existence by reinstatement, cannot be reconciled with the holding in *Hearth*, that the corporate plaintiff was incapable of executing enforcible agreements during its cancellation period. While the rationale in *Stutzman* and the holding in *Hearth* cannot be reconciled, the decisions may be harmonized by the application of the federal rules. In the

instant case, as in *Stutzman*, the action when commenced may have been void as to the corporate plaintiff, however, the liberal amendment policy of the federal rules permits a plaintiff who reacquires capacity to amend the complaint to moot the capacity problem. Fed.R.Civ.P. 15; Wright & Miller, Federal Practice & Procedure § 1474. If an appropriate amendment is presented to the court, the corporate plaintiff may be determined to be a proper and qualified party to this action and the parties may at that time brief the "relation back" issue and the effect of amendment on the statute of limitations. On the pleadings before the court it is clear that under *Hearth* and the reasoning of *Stutzman*, the corporate plaintiff lacked capacity to prosecute this action when it was commenced. Accordingly, the corporate plaintiff is dismissed with leave to reinstate by appropriate amendment.

The defendants' substantive objections to the maintenance of this action arise from earlier litigation between defendant McDonald's Systems and the individual plaintiff Martino in connection with an alleged breach of the franchise agreement. Defendants argue that Martino executed a release in the prior suit, that defendant is barred from raising this cause of action by the compulsory counterclaim rule, and that res judicata precludes assertion of the instant action. As the resolution of these issues hinges on the scope of the original litigation, the procedural history of that action is a necessary preface to the court's analysis.

One provision of the franchise agreement between Martino [and three other franchisees not involved in this action] and McDonald's Systems prohibited acquisition of financial interest by the franchisee or a member of his immediate family in competing self service food businesses without written consent of defendants. In 1968 Martino allegedly violated this provision, and in 1972 McDonald's Systems sued in the federal district court for the Southern District of Iowa to terminate the Martino franchise. The franchisees filed motions to strike or for a more definite statement in

the action, and these motions were denied by the Iowa District Court on February 2, 1973. No answer was filed by the franchisees subsequent to that date and no appropriate motion was advanced by the McDonald's Systems plaintiff in that action. Apparently settlement negotiations were proceeding and these negotiations culminated in a settlement agreement that was entered by the court on September 5, 1973. The terms of the settlement agreement provided that the franchisees sell the franchise to McDonald's Systems and Franchise Realty Interstate Corporation (FRIC) for $140,000 pursuant to an agreement executed August 10, 1973. The provisions of that sale agreement were not incorporated by reference into the consent decree of September 5, 1973.

■ The first contention of defendants is that certain language in the August 10, 1973 sales agreement constitutes a release of the substance of this and all claims by plaintiff against McDonald's Systems. The language relied on by defendants is that the franchisees "agree to indemnify and hold harmless Buyer [herein defendants] . . . from any and all claims and causes of liability arising out of seller's [herein plaintiff's] ownership, maintenance and/or operation of said premises prior to takeover date." This language does not on its face bar any and all claims of plaintiff arising from the franchise agreement or termination, and on a motion for summary judgment this court cannot say as a matter of law that this language precludes the instant action.

■ Similarly, the court finds no factual or legal support for defendants' contention that language in the sales agreement providing that the franchisees, Martinos, sold "all rights, title and interest of all assets, tangible and intangible" to McDonald's Systems and FRIC operates as an assignment of the instant antitrust action.

■ The second contention asserted by McDonald's Systems is that the antitrust claims alleged in this lawsuit were compulsory counterclaims in the earlier Iowa litigation, thus failure to raise those claims in

that action bars this subsequent litigation. Fed.R.Civ.P. 13(a). The plaintiff's complaint alleges two violations of the federal trade regulations, count I alleges restrictive agreements and count II alleges an illegal tying arrangement. A counterclaim is considered compulsory under rule 13(a) if it bears a "logical relationship" to the primary claim asserted, and failure to plead such a related claim forecloses later litigation. *See e. g., Piperlines Local Union No. 798 v. Ellerd*, 503 F.2d 1193 (10th Cir. 1974); *United States v. Heyward-Robinson Co.*, 430 F.2d 1077 (2d Cir. 1970). The concepts underlying this logical relationship analysis are apparent:

> The phrase "logical relationship" is given meaning by the purpose of the rule which it was designed to implement. Thus a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and economy require that the counterclaimant be permitted to maintain his cause of action.

*Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3rd Cir. 1961). Application of this logical relationship analysis persuades the court that the action asserted in count I of plaintiff's complaint challenging the legality of the very provision under which the Martino franchise was terminated is logically related to the contract action in which Martino forfeited the franchise for violation of the provision. The Iowa consent decree necessarily rests on the provision which the plaintiff now challenges, and that judgment assumes its validity and enforcibility. Certainly a franchisee must be free to challenge restrictive provisions in a franchise contract, however, such a challenge is a compulsory counterclaim if the franchisor seeks termination of the franchise for violation of the purportedly illegal terms.

■ The logical relationship between the plaintiff's allegations in count I and the basis of the Iowa termination action is apparent on its face. No such logical relationship may be discerned as to the claim asserted in count II of plaintiff's complaint. Count II challenges an entirely different provision of the contract which relates to the operation of the franchise in purchasing beverages. There is some evidence in the record that the parties considered express reservation of this claim from the scope of the Iowa consent decree, however, the understanding of the parties is not determinative of this issue. That evidence merely reflects the view of the parties that the tying claim is separate from the breach of terms issue, an assessment with which the court concurs. The legality or enforcibility of the tying arrangement is not logically related to the contract termination action, thus the claim in count II would have been a permissive counterclaim in the Iowa litigation. Fed.R.Civ.P. 13(b).

■ Plaintiff's opposition to the applicability of rule 13(a) is premised on *Mercoid v. Mid-Continent Investment Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944) in which the Supreme Court held that an antitrust counterclaim in a patent infringement action is a permissive counterclaim under rule 13(b), thus failure to assert the claim in an infringement action by the patentee did not preclude subsequent litigation of the alleged antitrust violations in connection with marketing the patent. Several courts have read the *Mercoid* language expansively, holding that *Mercoid* entirely exempts antitrust actions from the scope of rule 13(a). *See, Reagan v. Commonwealth Theatres of Puerto Rico*, 300 F.Supp. 676 (D.C. P.R.1969); *Cf. Canned Foods Inc. v. United States*, 146 F.Supp. 470, 135 Ct.Cl. 862 (1956). This court is persuaded that the more persuasive authorities have restricted the *Mercoid* holding to patent misuse claims. *See, e. g., Switzer Bros. Inc. v. Locklin*, 207 F.2d 483 (7th Cir. 1953); *Cf. United States v. Eastport Steamship Corp.*, 255 F.2d 795 (2d Cir. 1958). *See generally* Wright & Miller, Federal Practice & Procedure § 1412. Accordingly, the court rejects the plaintiff's contention that a claim under the Sherman or Clayton Act cannot be construed as a compulsory counterclaim under rule 13(a).

■ Although this court has determined that plaintiff's claim in count I would have been a compulsory counterclaim in the Iowa litigation, the procedural context of this action prevents the claim from fitting comfortably into the preclusion principle whereby an unasserted counterclaim is barred from subsequent litigation under rule 13(a). Whether the operation of the rule is framed in terms of estoppel, waiver or res judicata, it is clear that rule 13(a) articulates a rule of preclusion adopted to foreclose subsequent federal litigation of issues which should properly have been resolved in an earlier action. The Advisory Committee Notes to rule 13(a) support this premise, indicating that "[i]f an action proceeds to judgment without the interposition of a counterclaim as required by subdivision (a) of this rule, the counterclaim is barred." Yet the actual language of the preclusion rule does not incorporate that concept. Rule 13(a) simply provides that a "pleading shall state as a counterclaim any claim . . . the pleader has against the opposing party if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." The rule does not specifically address a principle of preclusion in cases in which no appropriate pleading, i. e., answer, has been filed. Fed.R.Civ.P. 8(b). As no answer was filed by plaintiff Martino in the Iowa litigation prior to the consent judgment, the express applicability of rule 13(a) to the instant case is unclear. Thus the court must determine whether the filing of an answer is a prerequisite for claim preclusion under the rule.

■ In interpreting the state analogues to federal rule 13(a) several state courts and the Ninth Circuit Court of Appeals have concluded that the rule governs in the absence of an answer if the action proceeds to judgment without assertion of the compulsory counterclaim. *See, e. g., Harris v. Jones*, 404 S.W.2d 349 (Tex.Civ.App.1966);

*Mensing v. Sturgeon*, 250 Iowa 918, 97 N.W.2d 145 (1959); *Keller v. Keklikian*, 362 Mo. 919, 244 S.W.2d 1001 (1951); *Brenner v. Mitchum, Jones & Templeton Inc.*, 494 F.2d 881 (9th Cir. 1974). Defendants have referred the court to a municipal court decision, *Firemen's Insur. Co. v. L. P. Steuart & Bros. Co.*, 158 A.2d 675 (D.C.Mun.App.1960) which holds that failure to file an answer prior to default judgment does not except a claim from the bar of rule 13(a). The court is persuaded that these authorities represent a reasoned approach to the application of rule 13(a). To hold otherwise would place a premium on non-compliance with the federal rules, thus encouraging defendants to attempt to reserve by inaction and silence claims which could be expressly reserved in the consent judgment. *Cf. Benjamin v. United States*, 348 F.2d 502, 172 Ct.Cl. 118 (1965). In reviewing the circumstances of the instant case, the court concurs with the Ninth Circuit which "fail[ed] to see anything in the statute or in logic to support plaintiffs' distinction" between answering and non-answering defendants where the action has proceeded to judgment on the merits, by default or by consent, without interposition of an answer asserting the compulsory counterclaim.

Plaintiff relies on *United States v. Thompson*, 262 F.Supp. 340 (S.D.Tex.1966) in arguing that the rule requires the filing of an answer for applicability of the preclusion principle. In *Thompson* the court noted in dicta that filing a responsive pleading is a prerequisite to the applicability of the rule, however, that technical reading of the rule is not supported by the cited authorities and it was not necessary to the resolution of the case before the court. The defendants in *Thompson* urged that rule 13(a) precluded litigation of a claim which would have been a compulsory counterclaim in an earlier action brought by them against the Government. In that prior action the Thompsons as plaintiffs took a voluntary dismissal with prejudice before the Government filed a responsive pleading. In holding that Government's claim was not precluded by the Thompsons' voluntary dismissal prior to the Government's answer in

the earlier litigation, the court recognizes that a plaintiff's tactical decision cannot foreclose a defendant's claim. Certainly this result is dictated by rule 41(a)(1) and (2), and it is not in conflict with the cases cited above holding that a non-answering defendant may be precluded from litigating issues which should have been pleaded in an earlier lawsuit.

Similarly, the plaintiff's reliance on *Lawhorn v. Atlantic Refining Co.*, 299 F.2d 353 (5th Cir. 1962) is misplaced. *Lawhorn's* rule 13 argument was predicated on the defendant's failure to file a counterclaim in an earlier action which proceeded to judgment on defendant's rule 12(b) motion to dismiss. The Fifth Circuit reasoned that a counterclaim need not be asserted in an action in which the plaintiff failed to state a claim upon which relief may be granted. The court found that a valid claim by plaintiff is the necessary predicate for a compulsory counterclaim by defendant. While this court hesitates to adopt the reasoning of the Fifth Circuit as to the necessity of a valid plaintiff's claim as a prerequisite for applicability of rule 13, the court is persuaded that the results in *Lawhorn, Thompson*, and the default judgment cases discussed above can be reconciled into a single proposition. Where the defendant in an action is obligated to plead, i. e., file an answer, failure to assert a compulsory counterclaim in such an answer precludes subsequent litigation on that claim. The obligation to plead by filing an answer arises within a proscribed time frame, either from commencement of the action, or denial of rule 12 motions. Thus, in *Thompson*, plaintiff's voluntary dismissal prior to the time in which defendant was obligated to answer could not preclude subsequent litigation of an unasserted claim. In *Lawhorn* the favorable ruling on the defendant's motion to dismiss relieved the defendant from the obligation of filing an answer, therefore the unasserted counterclaim was not precluded under rule 13(a). In *Firemen's Insurance Co., supra*, the defendant's failure to answer and assert a compulsory counterclaim after becoming obligated to plead by valid

service of process precluded subsequent action on the unasserted claim.

 Thus rule 13 works a forfeiture whether cast in terms of res judicata, waiver or estoppel when a defendant is obligated to plead a compulsory counterclaim and fails to do so. In the context of a default judgment that obligation arises from passage of time, in the context of a voluntary plaintiff's dismissal or defendant's rule 12 motions that obligation does not arise at all. However, the application of this obligation to plead principle to the context of consent judgments is problematic. A consent decree may be entered prior to the date on which the defendant is obligated to answer, or it may be entered subsequent to the date on which pleading is required. In the instant case, the consent decree was entered nearly six months after the defendant became obligated to answer McDonald's Systems complaint and no answer was filed. Thus the obligation principle which harmonizes the cases discussed above as to the non-answering defendant could foreclose the claim in count I of plaintiff Martino's complaint. However, if the obligation to plead is the touchstone for the rule 13 bar, the non-answering defendant who enters a consent decree nineteen days after service of process could theoretically proceed on unasserted claims that are logically related to the settled claim while the non-answering defendant who enters a consent decree twenty-one days after service would be precluded by the obligation to plead analysis. Such a distinction would ignore both the concept of complete adjudication of actions embodied in rule 13 and the principle of finality of litigation toward which the rule is directed. Thus the obligation to plead by mere passage of time cannot be accepted as the ultimate analysis for precluding claims of non-answering defendants under rule 13. Rather this court is persuaded that the interests of rule 13 are best served by a straightforward evaluation of the burden of the non-answering defendant to assert a compulsory counterclaim in the factual framework of the given case. Thus in the case of a default judgment, defendant's inaction in asserting a claim should result in forfeiture. In a consent agreement wherein the parties have consulted and compromised the issues between them, that agreement should represent settlement of those claims logically related to the principal action. In this context enforcement of the preclusion rule is premised on defendant's knowing failure to assert the claim prior to judgment even though that judgment may be entered in advance of the date for answering under the rules. The interests of judicial economy and fairness to the litigants are satisfied, and the purpose of rule 13(a) as set forth in the advisory notes is achieved.

This result is consistent with the analysis espoused by Professor Wright for determining whether a non-answering defendant's compulsory counterclaim is precluded by rule 13(a). Wright suggests that "if the doctrine of res judicata is employed as the basis for the barring effect of rule 13(a) then regardless of the type of judgment rendered [consent, default, or on the merits] the counterclaim will be barred in any subsequent action." Wright & Miller, Federal Practice & Procedure § 1417 at 97. The Seventh Circuit Court of Appeals has employed res judicata as the underpinning of rule 13(a), thus in this circuit a compulsory counterclaim not asserted in an earlier action is barred if the action proceeds to judgment regardless of the defendants' noncompliance with the federal rules. *Switzer Bros. v. Locklin*, 207 F.2d 483, 488 (7th Cir. 1953).

This court's resolution is premised on the purposes and operation of rule 13(a), however, the same result is dictated by the principles of res judicata. *See e. g., Aerojet General Corp. v. Askew*, 511 F.2d 710 (5th Cir. 1975); *Astron Industrial Asso. Inc. v. Chrysler Motors Corp.*, 405 F.2d 958 (5th Cir. 1968). While this court need not determine whether rule 13(a) and the federal law of res judicata are coextensive or supplementing principles, in this case it is clear that neither would permit a litigant to impair the rights established in an earlier action.

508

The applicability of rule 13(a) or general res judicata principles to the corporate plaintiff, McDonald's of Ottumwa need not be expressly decided at this time as that plaintiff has been dismissed with leave to amend. The court notes, however, that the exact identity of issues and parties may well dictate the same disposition for count I if the corporate plaintiff is reinstated.

In summary the court finds that Martino in seeking damages to the value of his franchise rather than to the shares of his corporate interest may proceed in this action as a proper plaintiff. The corporate plaintiff, McDonald's of Ottumwa, lacked capacity at the time this action was commenced and is hereby dismissed with leave to reinstate. The court further finds that the claim alleged in count I of plaintiff's complaint would have been a compulsory counterclaim in the earlier franchise termination action by McDonald's Systems and Martino's failure to assert that claim in the earlier action precludes litigation in this forum. Judgment is hereby entered for the defendants on count I of the plaintiff's complaint as that claim is barred by rule 13(a) and res judicata.