**USM  CORPORATION, Plaintiff,**

v.

**SPS  TECHNOLOGIES, INC., Defendant.**

**No.  74  C  1514.**

United States District Court,
N.D. Illinois, E.D.

May 23, 1984.

Raymond P. Niro, Timothy J. Haller, Hosier, Niro & Daleiden, Ltd., Chicago, Ill., John Del Ponti, Hartford, Conn., Owen J. Meegan, Beverly, Mass., for plaintiff.

Leonard J. Santisi, Curtis, Morris & Safford, P.C., New York City, Donald L. Welsh, Welsh & Katz, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court are three motions filed by defendant SPS Technologies, Inc. ("SPS"): (1) Motion For Summary Judgment on Count V of Plaintiff USM Corporation's ("USM") Amended Complaint; (2) Motion For An Order Requiring USM to Account to SPS for Royalties Due Under License Agreement; and (3) Motion for Costs Pursuant to Rule 54(d). Each motion is addressed below.

## I. PROCEDURAL HISTORY

In December, 1969, SPS brought suit in this Court (hereinafter referred to as the "1969 infringement litigation") against USM alleging infringement of a patent for a patch-type self-locking threaded fastener (hereinafter referred to as the "Villo patent"). That litigation culminated in a consent decree issued on May 3, 1971. Under that decree USM acknowledged that the Villo patent was valid and had been infringed. Also as part of the settlement, SPS granted USM a license which allowed USM to continue using the patent but required it to pay royalties to SPS.

In 1974, USM brought the present suit seeking to invalidate the SPS patent, recover royalties, and recover damages under the antitrust laws. On April 19, 1976, this Court entered an order granting a separate trial on the antitrust counts to be heard after trial on the patent counts. After issuing summary judgment on certain counts (see *USM Corp. v. Standard Pressed Steel Co.*, 453 F.Supp. 743 (N.D.Ill. 1978)), trial on the remaining patent count (Count IV) commenced. Following that trial, the Court found that SPS had committed fraud on the Patent Office and that USM was entitled to have the patent declared void. *USM Corp. v. SPS Technologies, Inc.*, 514 F.Supp. 213 (N.D.Ill.1981). On appeal, however, the Seventh Circuit reversed, holding that the 1971 consent decree was *res judicata* in the subsequent litigation and therefore prevented the parties from relitigating the validity of the Villo patent and USM's infringement. *USM Corp. v. SPS Technologies, Inc.*, 694 F.2d 505, 510 (7th Cir.1982).

## II. DISCUSSION

### A. *The Remaining Antitrust Count*

USM now seeks a trial on Count V, the remaining antitrust count in the Amended Complaint. USM's theory of liability under Count V is grounded upon its allegation

that the Villo patent was fraudulently procured from the Patent Office. *See generally Walker Process Equipment Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 179, 86 S.Ct. 347, 351, 15 L.Ed.2d 247 (1965). SPS advances three grounds in support of its motion for summary judgment on Count V. First, SPS argues that USM's failure to plead the fraudulent procurement antitrust claim as a compulsory counterclaim in the 1969 infringement litigation is a bar, under Fed.R.Civ.P. 13(a), to that claim in the present proceeding. Second, SPS argues that USM's antitrust claim is barred by the doctrine of *res judicata.* Third, SPS argues that the Seventh Circuit's opinion, as the law of the case, now bars the antitrust count.

Rule 13(a) provides:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Any such claim not so pleaded is thereafter barred. *See, e.g., Martino v. McDonald's System, Inc.*, 598 F.2d 1079, 1081–82 (7th Cir.1979), *cert. denied*, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979); *United States v. Eastport Steamship Corp.*, 255 F.2d 795, 802 (2d Cir.1958).

In *Mercoid Corp. v. Mid-Continent Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1943), the Supreme Court stated:

Though Mercoid were barred in the present case from asserting any defense which might have been interposed in the earlier litigation [patent infringement], it would not follow that its [antitrust] counterclaim for damages [in later litigation] would likewise be barred. That claim for damages is more than a defense; *it is a separate statutory cause of action. The fact that it might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) of the Rules of Civil Procedure, does not mean that the failure to do so renders the prior judgment res judicata as respects it.* The case is then governed by the principle that where the second cause of action between the parties is upon a different claim the prior judgment is *res judicata* not as to issues which might have been tendered but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.'

*Id.* at 671, 64 S.Ct. at 274 (emphasis supplied) (citations omitted). *Mercoid*, however, has been overwhelmingly criticized by courts and commentators. *See, e.g., Burlington Industries v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir.1982); *United States v. Eastport Steamship Corp.*, 255 F.2d 795, 805 (2d Cir.1958); *Lewis Mfg. Co., Inc. v. Chisholm-Ryder Co., Inc.*, 82 F.R.D. 745, 750 (W.D.Pa.1979); *Martino v. McDonald's System, Inc.*, 432 F.Supp. 499, 504–505 (N.D.Ill.1977), *aff'd*, 598 F.2d 1079 (7th Cir.1979); *Dolfi Music, Inc. v. Forest Inn, Inc.*, 59 F.R.D. 5, 6–7 (E.D.Wis.1973); *Borden Co. v. Sylk*, 42 F.R.D. 429, 432 (E.D.Pa.1967); 3 J. Moore, Moore's Federal Practice ¶ 13.13 at 13–77 (2d ed. 1984); C. Wright & A. Miller, Federal Practice and Procedure, § 1412, at 61–64 (1971). Several courts have limited the *Mercoid* holding to its facts: patent misuse claims. *E.g., United States v. Eastport Steamship Corp., supra*, 255 F.2d at 805; *Martino, supra*, 432 F.Supp. at 505.[1] In fact, the court in *Borden Co. v. Sylk*, 42 F.R.D. 429 (E.D.Pa.1967) observed:

There is nothing in *[Mercoid]* which holds that a counterclaim under § 4 of the Clayton Act, 15 U.S.C. § 15, was permissive (and hence one not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim), rather than compulsory. The court apparently assumed that the counterclaim was a permissive one.

*Id.* at 432 (footnotes omitted).

Notwithstanding *Mercoid*, the majority of courts, when faced with this issue, have

---

**1.** *But see Gasswint v. Clapper*, 17 F.R.D. 309, 313 (W.D.Mo.1955).

held that antitrust claims are compulsory counterclaims under Rule 13(a) if the antitrust claim arises out of the same transaction or occurrence as the original claim. *E.g., Burlington Industries v. Milliken & Co., supra,* 690 F.2d 380, 389 (4th Cir. 1982); *Lewis Mfg. Co., Inc. v. Chisholm-Ryder Co., Inc.,* 82 F.R.D. 745, 750 (W.D. Pa.1979); *Martino v. McDonald's System, Inc.,* 432 F.Supp. 499, 505 (N.D.Ill.1977), *aff'd,* 598 F.2d 1079 (7th Cir.1979); *Dolfi Music, Inc. v. Forest Inn, Inc.,* 59 F.R.D. 5, 6 (E.D.Wis.1973). The Seventh Circuit has expressly refused to decide the isue. *See Martino v. McDonald's System, Inc.,* 598 F.2d 1079, 1082 n. 3 and 1086 n. 10 (7th Cir.1979) (stating that "we do not consider the merits of Martino's argument that *Mercoid* requires that all antitrust counterclaims be treated as permissive..." and "we express no view on the merits of the plaintiff's argument that *Mercoid* classifies all antitrust claims as permissive....") Accordingly, this Court restricts the *Mercoid* holding to its facts and rejects USM's contention that the antitrust claim cannot be construed as a compulsory counterclaim under Rule 13(a).

■ A counterclaim will be considered compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." Fed.R.Civ.P. 13(a). Courts give the phrase "transaction or occurrence" a broad interpretation in order to achieve judicial economy by preventing a multiplicity of actions. *Warshawsky & Co. v. Arcata Nat. Corp.,* 552 F.2d 1257, 1261 (7th Cir.1977); *In re Oil Spill,* 491 F.Supp. 161, 168 (N.D.Ill. 1979). A counterclaim arises out of the same transaction or occurrence when it is "logically related" to the opposing party's claim. *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926); *Warshawsky & Co. v. Arcata Nat. Corp., supra,* 552 F.2d at 1261. A logical relationship will be found to exist where separate trials on each of the respective claims would involve a substantial duplication of effort and time by the parties and the court. Relevant considerations include whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) are offshoots of the same basic controversy between the parties. *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir.1961); *Lewis Mfg. Co. v. Chisholm-Ryder Co.,* 82 F.R.D. 745, 748–49 (W.D.Pa.1979).

■ USM admits that its theory of antitrust liability is grounded upon its allegation that the Villo patent was fraudulently procured. Had SPS raised the fraudulent procurement claim in the 1969 infringement litigation, the Villo patent would have been successfully challenged. *See USM Corp. v. SPS Technologies, Inc.,* 694 F.2d 505, 508 (7th Cir.1982). Since the fraud allegations necessary to invalidate the Villo patent are identical to the fraud allegations which provide the basis for the antitrust claim (Amended Complaint, ¶s 17–20), there can be no doubt that these claims, although grounded in different legal theories, are essentially identical. Furthermore, the fraudulent procurement of a patent claim, whether asserted as a defense to an infringement suit or brought separately as an antitrust claim, is "logically related" to a claim for patent infringement. As such, that claim must be presented under Rule 13(a) or it is forever barred. Therefore, USM's antitrust claim under Count V of the Amended Complaint cannot be maintained in this suit because it was a compulsory counterclaim to SPS' claim in the 1969 infringement litigation.

■ Even apart from Rule 13(a), USM's antitrust claim is barred by the doctrine of *res judicata. Res judicata* will apply if three essential elements are present: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits. *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982). Only the second element is in dispute in this case. "[T]he main purpose of the doctrine of *res judicata* is to protect a defendant from being worn down by a plaintiff who sues him

over and over again for the same allegedly wrongful conduct...." *Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150, 1152 (7th Cir.1984).

It is well settled that "long-standing principles of *res judicata* establish a narrowly defined class of 'common law compulsory counterclaims.'" *Martino v. McDonald's System, Inc.,* 598 F.2d 1079, 1083 (7th Cir. 1979) (*quoting* Restatement (Second) of Judgments § 56.1(2)(b), Reporter's Note on Comment f (Tent. Draft No. 1, 1973). "[P]recedent and policy require that *res judicata* bar a counterclaim when its prosecution would nullify rights established by the prior action." *Martino, supra,* 598 F.2d at 1085.

■ Furthermore, the doctrine of *res judicata* not only bars relitigation of issues actually determined in the prior proceeding, but also bars matters "which could have been raised in the prior suit." *Hagee v. City of Evanston,* 729 F.2d 510 at 512 (7th Cir.1984); *Diaz v. Indian Head, Inc.,* 686 F.2d 558, 562 (7th Cir.1982); *See also Martino, supra,* 598 F.2d at 1083. The issue becomes whether the newly raised claim arises out of the "same basic factual situation" as the claims of the prior suit. *Diaz, supra,* 686 F.2d at 562.

It is apparent that the antitrust fraudulent procurement claim arises out of the "same basic factual situation" as the claim of infringement brought in the 1969 litigation. In fact, it is impossible to interpret the antitrust count as anything but a direct challenge to the 1971 consent decree. If USM's antitrust count had merit, it would have been a defense to the 1969 litigation,

probably materially changing the outcome of that settlement agreement.

USM, however, argues that, under *Mercoid,* the antitrust counterclaim is a separate cause of action for the purpose of *res judicata* and that the 1971 consent decree does not preclude litigation of a separate cause of action under the antitrust laws. The *Mercoid* holding, however, merely permits a defendant to raise a subsequent antitrust claim based on the theory of patent misuse. See discussion *supra* at 169. This Court declines to extend *Mercoid* to antitrust claims grounded upon fraudulent procurement.

■ The Seventh Circuit has held that the doctrine of *res judicata* bars USM's attempt to relitigate the validity of the Villo patent notwithstanding USM's allegations of fraudulent procurement. *USM Corp. v. SPS Technologies, Inc.,* 694 F.2d 505, 508 (7th Cir.1982). The court reasoned that since fraud was "just another ground for challenging the validity of a patent," that defense should have been raised in the 1969 infringement litigation. *Id.* USM now seeks to hold SPS liable under the antitrust laws based upon the same allegations of fraudulent procurement. That claim, like the defense of fraudulent procurement, should have been raised in the 1969 infringement litigation. Since it was not raised, the doctrine of *res judicata* bars it in this litigation.[2]

**B. *Motion For An Order Requiring USM To Account To SPS For Royalties Due Under License Agreement***

SPS seeks an order requiring USM to account for royalties due SPS from the

---

**2.** Having held that Count V is barred by Rule 13(a) and the doctrine of *res judicata,* the Court declines to address SPS' "law of case" argument. USM's argument that SPS waived its right to assert the *res judicata* defense by not pleading it as an affirmative defense is without merit. While it is true that an affirmative defense cannot be raised for the first time on appeal (*see Crowder v. Lash,* 687 F.2d 996, 1008 (7th Cir. 1982)) or at trial (*see Stanish v. Polish Roman Catholic Union,* 484 F.2d 713 (7th Cir.1973)), SPS has submitted no authority for its contention that an affirmative defense cannot be raised for the first time in a motion for summary judgment. In fact, at least two courts have

expressly permitted a defendant to initially raise an affirmative defense by a motion for summary judgment. *See Weston Funding Corp. v. La-Fayette Towers, Inc.,* 410 F.Supp. 980, 982 n. 2 (S.D.N.Y.1976), *aff'd,* 550 F.2d 710 (2d Cir.1976); *Overseas Motors Inc. v. Import Motors Limited, Inc.,* 375 F.Supp. 499, 513 n. 25 (E.D.Mich.1974), *aff'd,* 519 F.2d 119 (6th Cir.1975). In any event, USM was fully aware of the 1971 consent decree (see Amended Complaint ¶ 6) and therefore was not unfairly disadvantaged by SPS' failure to plead *res judicata* as an affirmative defense in its answer. *See Baker v. Chicago, Fire & Burglary Detection, Inc.,* 489 F.2d 953, 955 (7th Cir. 1973).

period prior to the trial in 1978 through the expiration of the Villo patent on June 10, 1980. USM does not deny that royalties are due SPS, but rather seeks to have the amount of royalties due set-off against SPS' liability under the antitrust laws. As indicated in Section IIA of this opinion, however, USM's claim against SPS under the antitrust laws is barred under Rule 13(a) and the doctrine of *res judicata.* Any "set-off," therefore, as contemplated by USM is obviously not possible. Accordingly, SPS' motion is granted and USM is ordered to account to SPS for royalties due under the relevant license agreement.

### C. *Motion For An Award Of Costs Under Rule 54(d)*

Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.P. 54(d). Whether an award of costs is proper is a matter within the sound discretion of the district court. *Badillo v. Central Steel & Wire Co.,* 717 F.2d 1160, 1165 (7th Cir.1983). A prevailing party may, however, be denied costs if "it would be inequitable under all the circumstances in the case to put the burden of costs upon the losing party." *Lichter v. Foundation, Inc. v. Welch,* 269 F.2d 142, 146 (6th Cir. 1959).

On May 4, 1981, this Court found that SPS had "committed actionable fraud upon the Patent Office, and [that] such fraud ha[d] operated to the detriment of plaintiff USM...." *USM Corp. v. SPS Technologies, Inc.,* 514 F.Supp. 213, 250 (N.D.Ill.1981). Although the Seventh Circuit held that this Court's finding of fraud was insufficient to invalidate the Villo patent, the court expressly declined to review the fraud finding. *USM Corp. v. SPS Technologies, Inc.,* 694 F.2d 505, 510 (7th Cir.1982). Accordingly, this Court views its findings of fraud and bad faith on the part of SPS as special circumstances which would make it inequitable to award costs to SPS under Rule 54(d). Additionally, the complexity of this litigation represents an additional factor favoring denial of SPS'

motion for costs. *See Kalkowski v. Ronco, Inc.,* 424 F.Supp. 343, 353–54 (N.D.Ill.1976). Accordingly, SPS' motion for costs is denied and each party shall bear its own costs of litigation before this Court.

### III. CONCLUSION

For the reasons stated herein, SPS' motion for summary judgment on Count V of the Amended and Supplemental Complaint is granted. SPS' motion for an order requiring USM to account to SPS for royalties due under the license agreement is granted. SPS' motion for an award of costs pursuant to Rule 54(d), F.R.Civ.P., is denied.

IT IS SO ORDERED.