779 F.2d 52
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DUTY F. STICKLEN, et al., Plaintiffs-Appellants,
vs.
CITY OF MIDDLETOWN, OHIO, et al. Defendants-Appellees.
 84-3820
 United States Court of Appeals, Sixth Circuit.
 10/30/85
 
 AFFIRMED
 S.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 Before: MARTIN and CONTIE, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs appeal from the district court's order dismissing their complaint brought under 42 U.S.C. Secs. 1983 and 1985(3) alleging a deprivation of property and a state-created right to a referendum vote in violation of the due process and equal protection clauses of the fourteenth amendment. For the reasons that follow, we affirm.
 
 I.
 
 2
 Beginning in May 1977, the commissioners for the City of Middletown passed a series of 'emergency' ordinances enabling the City to initiate and complete improvements for Manchester Road. The last of these ordinances was passed in June 1983 and allowed the City to issue bonds for the project and to assess the costs of the improvements against benefited landowners. The assessments would then be used to retire the bonds.
 
 
 3
 Under the Ohio Constitution[1] and the Ohio Revised Code,[2] citizens have a right to place proposed municipal legislation on the ballot for a referendum vote. The constitution limits the referendum vote by specifying that 'emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect [and] shall not be subject to the referendum.' Ohio Constitution Sec. 1d. Therefore, by passing these ordinances as emergency measures, the voters of Middletown were unable to exercise their referendum powers.
 
 
 4
 In June 1981, documents were filed by concerned landowners, including the named plaintiff herein, that culminated in an initiative petition seeking to repeal all resolutions and ordinances passed by the Commission concerning the Manchester Road project. In July 1981, the initiative petitions were filed with the appropriate office, were placed on the ballot at the general election in November 1981 and subsequently approved by the voters of Middletown. Even though the previous 'emergency' ordinances were repealed, the City continued the Manchester Road improvements.
 
 
 5
 A suit was filed by the City in the Court of Common Pleas for Butler County on July 12, 1983 pursuant to Ohio Rev. Code Secs. 133.71 et seq.--a 'bond validation' suit--since it was necessary to determine if the City could issue bonds in light of the initiative measures allegedly repealing earlier Manchester Road ordinances. The purpose of such proceedings is to determine whether a municipality has the authority to issue securities. The court held, on April 10, 1984, that the initiative ordinance repealing the enabling legislation with respect to the Manchester Road project was an unconstitutional impairment of the City's contractual obligations. This was affirmed by the Court of Appeals, Tewlfth Appellate District of Ohio on April 29, 1985, and the Ohio Supreme Court will hear this case on further appeal.
 
 
 6
 The appellants subsequently filed this claim in the federal district court for the Southern District of Ohio on May 30, 1984. The complaint alleged causes of action under 42 U.S.C. Secs. 1983 and 1985 and jurisdiction pursuant to 28 U.S.C. Sec. 1343. Plaintiffs asserted that by virtue of declaring the enabling resolutions and ordinances to be emergency measures, the defendants denied them the right to vote by referendum as quaranteed by the Ohio Constitution. They asserted that the declaration of an emergency was not rational, and they were thereby deprived of voting and property rights without due process of law. The plaintiffs also alleged they were denied equal protection of the laws, and that the constitutional deprivations alleged resulted from a conspiracy. The relief prayed for was an injunction against assessments, $300,000 compensatory damages, costs and attorney's fees.
 
 
 7
 The defendants filed a motion to dismiss on July 10, 1984 which was granted by the district court on September 6, 1984. The district court reasoned that it lacked subject-matter jurisdiction because the plaintiff had not alleged a constitutional violation as required by Secs. 1983 and 1985. The plaintiffs allege that the district court erred in ruling that the plaintiffs did not state a claim.
 
 
 8
 The defendants argue that the plaintiffs could have asserted the constitutional claims brought in this lawsuit when they were defendants in the state court bond validation proceedings brought by the City. Since they failed to assert these claims, defendants argue that Ohio law requires these claims be barred by res judicata.
 
 II.
 
 9
 'It is now well settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' Migra v. Warren City School District Board of Education, 104 S. Ct. 892, 896 (1984). This is governed by 28 U.S.C. Sec. 1738 which provides that state 'judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State.' In Migra, which involved a state breach of contract claim brought in state court and a subsequent civil rights action brought in federal court, the Supreme Court held that state law determines whether a Sec. 1983 claim is precluded from being litigated in the subsequent suit under the doctrine of res judicata. The Court has subsequently held that federal courts must give the same, not greater, preclusive effect to a state court judgment that a state court would give. Marrese v. American Academy of Orthopedic Surgeons, 105 S. Ct. 1327, 1334 (1985). Therefore, Ohio law controls as to whether a prior bond validation proceeding bars a subsequent Sec. 1983 action.
 
 
 10
 Under Ohio law, the doctrine of res judicata provides that 'a final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them.' Johnson's Island, Inc. v. Board of Township Trustees, 69 Ohio St.2d 241, 243 (1982) (citing Norwood v. McDonald, 142 Ohio. St. 299 (1943)). Res judicata bars a subsequent action even though an appeal is pending in the prior lawsuit. See SSIH Equipment S.A. v. United States International Trade Commission, 718 F.2d 365, 370 (Fed. Cir. 1983); Nixon v. Richey, 513 F.2d 430, 438 n.75 (D.C. Cir. 1975) (per curiam). See also Ashley v. Ashley, 118 Ohio App. 155, 25 Ohio Op.2d 13, 193 N.E.2d 535 (1962) (in Ohio, a judgment has res judicata effect even when a case is pending on appeal).
 
 
 11
 This doctrine under Ohio law 'applies not only to what was determined but also every question which might properly have been litigated,' Stromberg v. Board of Education, 64 Ohio St.2d 98, 100 (1980) (emphasis added), and may apply even if the second lawsuit states a different cause of action. Johnson's Island, 69 Ohio St.2d at 244. See infra.
 
 
 12
 Plaintiffs contend that the parties in the present action are not the same parties as were in the state court action because the county commissioners were not plaintiffs in that action. However, it is clear that city officials are in privity with the City, and the other parties are substantially the same.
 
 
 13
 Plaintiffs next contends that the state court proceedings were narrow in scope, focusing only on the constitutionality of the initiative petition/ordinance that repealed all the Manchester Road enabling legislation. They argue that their constitutional claim should not have been brought in that proceeding because the claims were not 'ripe' until the initiative petitions were held to be invalid--when the repealed ordinances were again in effect.
 
 
 14
 This argument is flawed for two reasons. First, although the City brought the state court action because of the initiative proceedings, a bond validation action is allowed 'for the purpose of obtaining an adjudication of its [the City's] authority to issue the securities and the validity of the proceedings taken and proposed to be taken in connection therewith, including . . . any assessment of taxes levied or to be levied. . . .' Ohio Rev. Code Sec. 133.71(B). The City wanted to determine if it could float the bonds necessary to fund its completed project. Although the initiative proceedings repealing the prior legislation were the initial concern, a claim that the emergency provisions passed by the Commission were unconstitutional is clearly relevant as to whether bonds can be issued in this case. There is nothing in the Ohio Validation of Securities Act which limits the court as to the claims it can hear to determine the validity of issuing bonds. Second, to raise a ripeness argument in this context makes little sense. The plaintiffs assert that their statutory right to vote by referendum was arbitrarily taken from them. This claim became ripe, if at all, as soon as the commissioners declared an emergency. If the deprivation occurred, it had to have occurred when the emergencies were originally declared, not when the initiative proceedings which repealed those ordinances were declared unconstitutional.
 
 
 15
 Next, the plaintiffs contend that res judicata does not operate as a bar to a subsequent lawsuit when the party asserts a different 'cause of action.' Plaintiffs rely primarily on Norwood v. McDonald, 142 Ohio. St. 299 (1943) which holds that a subsequent cause of action, as compared to a claim, is not barred under the doctrine of res judicata.
 
 
 16
 The plaintiffs are correct in noting that Norwood has not been overruled and that the Supreme Court of Ohio continues to draw a distinction between 'claims' and 'causes of action.' However, that distinction only applies when a party is a plaintiff in both lawsuits. It does not apply in a situation, like the one before the court, where the plaintiff in the latter case was a defendant in the first case. Under this scenerio, the Ohio Supreme Court in Johnson's Island, 69 Ohio St.2d 241 (1982), 'adopted what appears to be a broad doctrine of preclusion indeed, although in a defensive, not offensive, context.' Migra, 104 S. Ct. at 899. Ohio law, therefore, requires a defendant to raise all claims and defenses that arise out of the same transaction or occurrence, although plaintiffs are allowed to bring more than one lawsuit relating to the same transaction if they assert separate causes of action. Therefore, the plaintiffs in this case are barred from raising these claims.[3]
 
 
 17
 We also note that these claims are not only barred by the common law doctrine of res judicata but also by the Ohio Rule of Civil Procedure 13(A), the compulsory counterclaim rule. Rule 13(A) is merely a codification of res judicata and reads:
 
 
 18
 A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.
 
 
 19
 Under this rule, defendants are required to raise any claim 'aris[ing] out of the transaction or occurrence that is the subject matter of the opposing party's claim' unless the claim fits into one of the exceptions. Since neither of the exceptions apply here the only question is whether these claims arise out of the same transaction or occurrence.
 
 
 20
 'A counterclaim arises out of the same transaction or occurrence when it is 'logically related' to the opposing party's claim.' USM Corp. v. SPS Technologies, Inc., 102 F.R.D. 167, 170 (N.D. Ill. 1984) (citing Moore v. New York Cotton Exchange, 270 U.S. 593 (1926)). As previously mentioned, the purpose of a bond validation proceeding is to determine whether the bonds can be issued. The City had passed ordinances allowing it to float bonds and assess the cost against landowners. The initiative proceedings repealed these ordinances. The bond validation proceeding had to focus on all these ordinances to properly determine whether the City had the 'authority to issue the securities. . . .' O.R.C. Sec. 133.71(B). If the City's emergency ordinances were unconstitutional, then there would not be authority to issue the securities. Therefore, all these claims arise out of the same transaction and are logically related to determining the validity of issuing bonds. Further, there is nothing in the Ohio Validation of Securities Act which prevents the plaintiffs from having raised these claims in the previous lawsuit.
 
 
 21
 Since we hold that these claims are barred under the common law doctrine of res judicata as well as Rule 13(A), we will not reach the constitutional issues raised by the plaintiffs. The order of the district court is therefore AFFIRMED.
 
 
 
 [1]
 Section 1f of the Ohio Constitution reads:
 The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law.
 
 
 [2]
 Section 731.29 of the Ohio Revised Code reads in pertinent part:
 Any ordinance or other measure passed by the legislative authority of a municipal corporation shall be subject to the referendum except as provided by section 731.30 of the Revised Code. No ordinance or other measure shall go into effect until thirty days after it is filed with the mayor of a city or passed by the legislative authority in a village, except as provided by such section. . . .
 (Emphasis added).
 
 
 [3]
 Although this court's recent decision in Duncan v. Peck, 752 F.2d 1135 (6th Cir. 1985) reasoned that Norwood's 'cause of action' approach was controlling even though the plaintiff in the federal court proceeding had been the defendant in the prior state court action, that case is easily distinguishable
 In Duncan v. Peck, the claim asserted in federal court was not related to the underlying claim in the prior state court proceeding; the claims did not arise out of the same transaction or occurrence. The initial suit focused on the validity of an oral contract, whereas the cause of action raised in the latter suit arose from alleged constitutional infirmities in the service of process in the trial court proceeding and not the underlying oral contract claim. In the instant case, the claims raised in federal court arose out of the same transaction or occurrence as the claims brought in state court. Therefore, Johnson's Island is controlling.