**WARSHAWSKY & COMPANY,**
**Plaintiff-Appellant,**

v.

**ARCATA NATIONAL CORPORATION**
**and Arcata Graphics Corporation,**
**Defendants-Appellees.**

**No. 76–1990.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1977.

Decided April 15, 1977.

Lee A. Freeman, Sr., Lawrence R. Levin, Chicago, Ill., for plaintiff-appellant.

Joseph DuCoeur, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

Appellant Warshawsky & Company (Warshawsky), plaintiff in an action pending against Arcata National Corporation and Arcata Graphics Corporation[1] in the District Court for the Northern District of Illinois, moved therein for a preliminary injunction restraining appellees from prosecuting in the District Court for the Northern District of California a separate action based on matter allegedly required to be asserted as a counterclaim in the Illinois lawsuit. On August 26, 1976, the district court granted the motion. Subsequently, on September 23, 1976, the district court, acting *sua sponte* and without prior intimation to any party, vacated its prior injunction. Warshawsky filed a timely notice of appeal on October 5, 1976. We have appellate jurisdiction under 28 U.S.C. § 1292(a)(1).[2]

## I. THE FACTUAL AND PROCEDURAL BACKGROUND

Warshawsky is a Chicago-based Delaware corporation that sells automotive parts and accessories through mail order catalogs distributed monthly. Arcata Graphics is a Connecticut-based New York corporation that prints mail order catalogs and other materials.

The disputes that have led to the litigation between the parties arise out of a business relationship dating back to the late 1960's. Sometime in 1969, Warshawsky officials met with various persons representing J. W. Clement Corporation, later renamed Arcata Graphics, to discuss the possibility of Arcata's printing mail order cata-

1. Unless the context indicates otherwise, subsequent references to Arcata include both appellees.

2. 28 U.S.C. § 1292(a)(1), in relevant part, provides:
   The courts of appeals shall have jurisdiction of appeals from:

   (1) Interlocutory orders of the district courts of the United States, . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions
   . . . .

logs for Warshawsky and its wholly-owned subsidiary, J. C. Whitney & Company (Whitney). Arcata conducted printing test runs for catalogs and, in June 1970, as a result of the negotiations and the test runs, the parties entered into an agreement under which Arcata printed and mailed in California millions of catalogs for Warshawsky over a five-year period. Upon the June 1975 termination of the written agreement, Arcata continued on a month by month basis, to print and mail Warshawsky catalogs. From December 1975 to April 1976, Arcata printed over twenty-four million catalogs. This printing took place at a time when the parties were negotiating for a new contract and to resolve Warshawsky's claims for breach of the old agreement.

The negotiations broke down. On April 12, 1976, Warshawsky filed suit in the Northern District of Illinois seeking to recover millions of dollars for claimed breaches of the old agreement. One week later, on April 19, 1976, Arcata Graphics instituted an action against Warshawsky and Whitney in California to recover, *inter alia*, amounts due and owing for printing done from December 1975 through April 1976.

After the filing of the complaints, a number of procedural motions were filed, briefed, and decided in both courts. On May 6, 1976, Arcata filed in the Illinois action a motion to transfer the case to California. Eleven days later Arcata filed its memorandum in support of transfer, with supporting affidavits. On the following day, Arcata National Corporation filed a motion to dismiss for want of personal jurisdiction. On May 19, 1976, Warshawsky filed a motion in the California suit to stay that action, premising its motion on the assertion that the California suit was a compulsory counterclaim to the Illinois action and should be prosecuted only in Illinois. On June 1, 1976, Arcata filed a memorandum in opposition to the stay motion, arguing that the California court was the appropriate forum for the plaintiff's and defendants' actions and that Warshawsky's stay motion should be denied because Arcata's claims were not compulsory counterclaims in the Illinois action. After considering the arguments of the parties, the California court denied Warshawsky's motion on June 11, 1976.

Five days later, on June 16, 1976, Warshawsky filed a motion in the Illinois court seeking to restrain Arcata from prosecuting the California action. Arcata resisted the motion on several grounds, submitting that 28 U.S.C. § 1404(a),[3] the basis for its earlier transfer motion, compelled transfer of the Illinois action to California, that judicial comity required that Warshawsky be precluded from relitigating identical issues previously rejected by the California court, that factors of convenience and justice pointed plainly to retention of Arcata's lawsuit in California and that Arcata's claims clearly were not compulsory counterclaims.

On August 10, 1976, the district court judge denied the appellees' motion to transfer the case to the Northern District of California. The court's decision rested on the judge's conviction that transfer would do no more than shift the convenience from one party to another. The court recognized that, under *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), a plaintiff's choice of forum was entitled to great weight and was not lightly to be disturbed. Relying on *General Portland Cement Co. v. Perry*, 204 F.2d 316 (7th Cir. 1953), the court observed that the defendants must establish that the balance of interest weighed strongly in favor of transfer if they were to prevail on their transfer motion. On the same day, the district court denied defendant Arcata National's motion to dismiss for lack of personal jurisdiction.

Approximately two weeks later, on August 26, 1976, the district court granted Warshawsky's motion to enjoin. Because of the sharp disagreement between the par-

---

**3.** 28 U.S.C. § 1404(a) provides:
   For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

ties as to the proper interpretation of the district court's order with particular regard to the basis on which the court rested its opinion, we set out the portions of the order pertinent to the disagreement.[4] The dispute reflected in briefs and arguments centers on whether the district court was resting the granting of the injunction on a determination that compulsory counterclaiming was appropriate or merely that the injunction would prevent duplication of effort by the parties and would conserve court time and effort. We recognize on this matter an inherent ambiguity in the decision as quoted in the margin, but also note some remarks from the bench at a subsequent session which would be indicative of a belief on the part of the court that it thought compulsory counterclaim status existed. While it might have been helpful to this court had the district court been more explicit, inasmuch as we have made our own independent determination of the counterclaim question we find it unnecessary to resolve the apparent ambiguity in the record or to determine the precise basis or bases for the district court's granting of the injunction. The court then set the cause for a pretrial conference on Friday, September 17, 1976.

Impressions developed at the scheduled pretrial conference apparently were inducing causes which led the judge to reconsider the August 26 order. After presiding at the September 17 conference, the district court judge "got the impression" that the appellees were ready for trial in California, that the California suit could be tried very soon, and that the appellees were very close there to being through with their discovery. The judge became concerned about the possibility that because of the counterclaim aspect of the case, both claims might languish in very complicated discovery proceedings for several years. Sometime during the conference the appellees appear to have asserted that Warshawsky had "conveniently" sued for an amount of damages approximately equal to Arcata's claim against them and that Warshawsky was "dragging its feet" on furnishing necessary discovery in the Illinois suit. Although admittedly uncertain whether there was substance to Arcata's contentions concerning the California litigation status, the district court judge nevertheless thought it apparent that determination of the issues between the parties would move forward more rapidly if the appellees were not enjoined from proceeding further in the California action. Accordingly, on September 23, 1976, the court vacated its earlier injunction. Its Memorandum Opinion and Order balanced the concept of "justice delayed is justice denied" with the consideration that avoiding duplication of effort and resolving related controversies in one proceeding was usually desirable by expressing the court's belief that the interests of justice and expediency would be served by

4. Plaintiff now moves to enjoin defendants from proceeding with the suit in the Northern District of California. In support of this motion plaintiff argues that: (1) defendants' suit in California would constitute a compulsory counterclaim in the present action, and (2) since defendants' California suit is an attempt to subvert this Court's jurisdiction, defendant should not be permitted to do so.

Defendants counter that this issue was already decided by the District Court for the Northern District of California when the Court denied a motion to stay proceedings before it, and that principles of judicial comity require that it not be relitigated here.

Generally, the federal district court which first obtains jurisdiction of issues and parties proceeds to adjudicate the matter, and to accomplish that end may properly enjoin a party before it from proceeding with a subsequent lawsuit in another federal district court. *Speed Products Co. v. Tinnerman,* 83 U.S.App.D.C. 243, 171 F.2d 727 (1948). However, courts have recognized that the injunction rule is not to be rigidly applied, but rests in the sound discretion of the court, *Small v. Wageman,* 291 F.2d 734 (1st Cir. 1961).

After careful consideration of the allegations of plaintiff's complaint and the parties' characterizations of the California suit, this Court concludes that defendants should be enjoined from proceeding in the California suit. The Court believes that an injunction will prevent duplication of effort by the parties and will conserve court time and effort.

Accordingly, *defendants are hereby enjoined from proceeding further in the action now pending before the District Court for the Northern District of California.*

permitting the parties to proceed in both jurisdictions.

## II. THE COUNTERCLAIM ISSUE

Warshawsky argues that the overwhelming weight of authority clearly requires a finding that the California action constitutes a compulsory counterclaim to the Illinois proceeding. The appellant submits that Arcata's claims for amounts allegedly due for printing services are logically related to Warshawsky's own contract claims and that Arcata's claims stem from a single, continuous course of dealing between the parties. Warshawsky asserts that this "course of dealing" will serve to "give particular meaning to and supplement or qualify" the terms of the parties' subsequent *ad hoc* dealings under §§ 1–205(1), (3) of the Uniform Commercial Code.[5] Arcata counters that its claims against Warshawsky for the 1976 catalogs are separate from any disputes involving earlier printing. Arcata recognizes that the courts have adopted a "logical relation" test, *see, e. g.*, 6 Wright & Miller, Federal Practice and Procedure § 1410, at 42 (1971), regarding the wording of Rule 13(a), Fed.R.Civ.P.,[6] but have not abandoned the limitation of compulsory counterclaims to disputes arising out of the *same transaction or occurrence.*

■ Courts generally have agreed that the words "transaction or occurrence" should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a). 6 Wright & Miller, *supra* at § 1410, at 40. The purpose of the rule is to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. *Southern Construction Co., Inc. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962). As a word of flexible meaning, "transaction" may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. *See Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926). Thus, the term "transaction" is to be construed generously to avoid the unnecessary expense inherent in multiplicity of litigation. *See generally Columbia Plaza Corporation v. Security National Bank*, 173 U.S.App. D.C. 403, 525 F.2d 620 (1975); *United States v. Heyward-Robinson Company, Inc.*, 430 F.2d 1077, 1081 (2d Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632; *Martin v. Graybar Electric Company, Inc.*, 266 F.2d 202, 204 (7th Cir. 1959). A counterclaim that arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim is compulsory and falls under Rule 13(a); a counterclaim that has its roots in a separate transaction or occurrence is permissive and is governed by Rule 13(b). 6 Wright & Miller, *supra* at § 1409, at 36–37.

■ In light of the generous reading given to the word "transaction" in the cases and the commentaries, we are persuaded that the contract claims Arcata attempted to present in the California action are compulsory. We think that the appellees' efforts to characterize their claims as separate and independent from Warshawsky's Illinois claims cannot be sustained.

Arcata's complaint in the California suit attempted to state eleven (11) distinct caus-

---

5. At this point in the litigation, no determination has been made whether California or Illinois law governs the contract or contracts upon which the parties ground their claims.

6. Fed.R.Civ.P. 13(a) provides:

A pleading shall state as a [compulsory] counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

es of action. Its pleading encompassed more than the printing and mailing of the January through April 1976 Warshawsky and Whitney catalogs. Indeed, Arcata alleged a contractual and business relationship implicating an implied covenant of good faith. The first four causes of action were pleaded in a fashion which highlighted distinct contractual agreements embodied in separate purchase orders.[7] Other counts in the complaint, particularly the Seventh through the Ninth Causes of Action, alleged earlier, unspecified agreements claimed to have been breached or repudiated. Certain background allegations describing the business relationship of the parties were realleged and incorporated by reference in ten out of the eleven causes of action.

Examination of the record in this case establishes the requisite logical relationship between the parties' claims. Arcata's printing and mailing of the appellant's mail order catalogs was concededly done in a manner virtually identical to the parties' previous "course of dealing." While the five-year written agreement was still in effect, Warshawsky and Whitney normally and regularly submitted to Arcata purchase orders indicating the number of copies of the particular issue to be printed, together with mailing plans and other specifications.[8] That method of infusing precise quantitative terms regarding printing services continued unaltered after the termination of the written agreement. Use of monthly purchase orders to inject specificity into the basic requirements contract represented a means by which the terms of the master contract were given functional meaning.

Arcata has consistently attempted to characterize the December 1975 through April 1976 printing as entirely different from earlier printing work. In an affidavit filed in the California action but subsequently made part of the record in the Illinois lawsuit, an Arcata official stated:

> 3. I am aware that some of the defendants have sued Arcata in federal court in Chicago. That lawsuit, however, does not result from the same work which is the subject of Arcata's claims before this Court. All of the claims of Warshawsky & Co. . . . in its Illinois action arose prior to June 1975. All of Arcata's claims in this action arose well after June 1975 and involved *completely different and later work.*
>
> 4. Starting in June 1975 and continuing through April of 1976, Arcata's San Jose Division was engaged in the printing and mailing of the defendants' mail order catalogs *pursuant to purchase orders* submitted each month by the defendants. During that period the printing of Warshawsky's catalogs constituted approximately 40% of the business of our plant in San Jose. [Emphasis supplied.]

That the later printing work was not exactly the same as that done under the June 1970 contract is literally true but inconclusive of the Rule 13(a) question. Similarly, the fact that the December 1975 through April 1976 catalog printing was done pursuant to monthly purchase orders does not negate the possibility that, either by way of informal agreement or by virtue of U.C.C. §§ 1–205(1) and (3), the terms of the earlier contract covered both the earlier and the later printing.

> 27. Since June 1970, Warshawsky requested that Arcata print, bind and mail Warshawsky's catalogs which were issued monthly. In doing so, Warshawsky submitted a purchase order to Arcata indicating the number of catalogs to be produced for the monthly issue. The parties would then attempt to establish mutually acceptable schedules for the production and mailing of that issue of catalogs. If and when the parties agreed upon such schedules, Arcata would then print, bind and mail that issue of catalogs at and from its plant in San Jose, California.

7. As plaintiff in the California suit, Arcata Graphics did not submit as attached exhibits the purchase orders that reflected the plaintiff's agreement to print, bind, and finish Warshawsky's and Whitney's catalogs and the defendants' agreement to pay a sum certain for the printing work.

8. In pleadings filed in the district court subsequent to the entry of the September 23 order vacating the injunction, Arcata set forth as factual background the manner in which the parties had operated, to wit:

Arcata argues that the proper test for distinguishing between compulsory and permissive counterclaims is whether the issues or facts are so interwoven that resolution of the disputed issues in one case will involve factual or legal conclusions affecting the determination of issues in the other case. It contends that Warshawsky's allegations regarding claimed breaches of the 1970 written agreement have no bearing on Arcata's claim that Warshawsky has failed to pay for printing of its 1976 catalogs.

In our view, such arguments represent merely an effort to have this court apply the "identity of issues," "res judicata," or "same evidence" tests rather than the crucial "logical relationship" test. *See generally* 6 Wright & Miller, *supra* at § 1410, at 44–48. We are mindful that the former tests may be helpful in some cases, *cf. Columbia Plaza Corporation, supra,* 525 F.2d at 624 n. 24, but we find them unduly restrictive at least in the case before us. In any event, our examination of the pleadings and record in this case causes us to conclude that the issues or facts are indeed so interwoven as to affect determinations in the other suit. We can hardly overlook the fact that Arcata's California complaint asserted causes of action quite distinct from its claims under the contracts arguably formed by the monthly purchase orders.

Upon consideration of the record, we hold that Arcata's California claims must be characterized as compulsory counterclaims under Rule 13(a).

### III. THE INJUNCTION ISSUE

■ That Rule 13(a) calls for assertion of the California causes of action as counterclaims in the Illinois action does not fully answer the question whether the district court should have awarded Warshawsky an injunction initially or whether its *sua sponte* vacation of that order was proper. As the *Columbia Plaza Corporation* court made clear, 525 F.2d at 627:

But the goals underlying Rule 13(a) would likewise be realized should either court [here, California or Illinois] transfer the cause of action pending before it to

the other. Indeed, the latter procedure would assure, beyond confinement of the litigation to one forum, the selection more convenient to the parties and to the courts, and more consonant with the overall interests of justice. [Footnotes omitted.]

In sum, Rule 13(a)'s single-suit objective could have been met by confining all of the disputes in either the California or the Illinois court. That the Illinois court first acquired jurisdiction of the controversy, with power to enjoin subsequent proceedings in another jurisdiction, although entitled to weight, does not necessarily entail the conclusion that it was required to exercise that power. *See Columbia Plaza Corporation, supra* at 627.

In *Martin v. Graybar Electric Company, Inc., supra,* 266 F.2d at 204, this court expressed the view that, unless unusual circumstances warrant, the party filing later in time should be enjoined from further prosecution of his suit. However, we recognized that the question whether an injunction should or should not issue where the parties were prosecuting distinct actions in different courts was within the discretion of the district court and that any mechanical solution of such problems was not wise judicial administration. *See id.* at 203. Eschewing any attempt to foresee the multitude of factors that would dictate the decision of the district court in any given case, we required such discretion to be utilized in a wise and consistent manner. *Id.*

■ In the present case, the record unfortunately appears to lack a manifestation of a consistent exercise of judicial discretion. Initially impressed with the relatedness of the claims and the necessity of preventing the parties' duplication of effort, the district court judge enjoined prosecution of the California action. Upon reconsidering all the previous affidavits and memoranda filed by the parties, together with assertions voiced by Arcata's counsel at a pretrial conference, convened primarily for exploration of settlement possibilities, the judge determined that the concept of "justice delayed is justice denied" was ev-

ery bit as important as, if not more important than, the consideration of resolving related controversies in one proceeding. The record discloses that the primary motivating factor in the judge's decision to vacate the August 26 injunction was his perception of the potential for great injustice because of delay.

On the present record, we are not in a position to say that the judge's concerns about prejudicial delay were or were not warranted. However, we note that the judge would have had the power once the two suits were consolidated in Illinois under the federal rules to provide for separate trial of Arcata's contract claims.[9] If expedition of the trial of Arcata's claims was necessary in order to promote the interests of justice, the district court possessed ample power to effect that result. Assuming arguendo that Arcata was close to being through with discovery on the printing claims, and the record does not support such an assumption, the district court judge similarly had ample power to counter any perceived "foot dragging" by Warshawsky.

The net result of the September 23 order vacating the injunction was to produce a condition of stalemate rather than expedition of litigation. Until the order was *sua sponte* entered, it is quite clear that the parties were in the process of going forward with the litigation, having stipulated pursuant to discussions at the pretrial conference that the California action should be transferred to Illinois. Indeed, the California judge entered an order to that effect but after learning of the Illinois order, the order of transfer was set aside.[10] Nor do we find any real basis in the record for concluding that the California suit could be tried promptly to judgment. The fact that a trial date has been set in a civil action in the light of the so-called Speedy Trial Act and other types of priority litigation with which district courts are confronted is far from being an assurance that the trial will actually occur at any foreseeable time. We have no basis for comparing the individual calendars of the two district court judges in question, but we do note in the 1976 Annual Report of the Director of the Administrative Office of the United States Courts that the median time interval for all civil trials from issue to trial for the preceding fiscal year was 11 months for the Northern District of Illinois and was 15 months for the Northern District of California. We entertain no illusion regarding expeditious civil dispositions until Congress provides the long-needed additional district judgeships.

We would subvert *Martin*'s insistence upon a wise and consistent exercise of judicial discretion if we approved the utilization

---

**9.** Rule 13(*i*), Fed.R.Civ.P., provides:

> If the court orders separate trials as provided in Rule 42(b), judgment on a counterclaim or cross-claim may be rendered in accordance with the terms of Rule 54(b) when the court has jurisdiction so to do, even if the claims of the opposing party have been dismissed or otherwise disposed of.

Rule 42(b), Fed.R.Civ.P., provides:

> The court, in furtherance of convenience *or to avoid prejudice*, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States. [Emphasis supplied.]

Rule 54(b), Fed.R.Civ.P., in pertinent part, provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

**10.** This court after having heard oral argument, in order to protect its appellate jurisdiction, entered an injunction restraining Arcata from prosecuting its California action. If subsequent to the entry of this court's injunction, the California court has transferred the California action to the Northern District of Illinois, presumably the litigation may now pick up from the point at which the roadblock occurred some six months ago.

of extra-record facts as a basis for setting aside injunctive orders presumably entered only after a careful consideration of the record. Although this circuit has generally followed the rule that the court first acquiring jurisdiction of a controversy should enjoin subsequent proceedings in other jurisdictions, *e. g., Martin, supra; Milwaukee Gas Speciality Co. v. Mercoid Corporation*, 104 F.2d 589, 592 (7th Cir. 1939), it has never laid down an inflexible rule that the prior filing controls. *Martin* recognized that a multitude of factors might dictate a particular injunction decision. Significantly, however, *Martin* referred to unusual circumstances "appear[ing] in th[e] record." 266 F.2d at 204. We think the district court improperly went *dehors* the record when it relied upon subjective impressions rather than objective record facts in overturning its earlier August 26 order. Serious reflection upon impressions gleaned from a pretrial conference is always commendable, but hasty judicial action which bypasses or undercuts the adversarial nature of our procedural system can sometimes, as here, frustrate the very objective sought.

The district court had at its command a variety of procedural devices designed to expedite the decision of uncomplicated issues. *Columbia Plaza Corporation, supra*, 525 F.2d at 629. Instead of employing these devices or promoting Rule 13(a)'s single-suit objective, the court unfortunately fragmented the interwoven claims and delayed rather than speeded the disposition of the controversy. *See generally* Rule 1, Fed. R.Civ.P.[11] On the record before us, unsupplemented by additional materials which might support or negate the "impressions" which prompted the district court's September 23 order, we conclude that there was indeed an abuse of discretion.

Accordingly, the order vacating the injunction entered by the district court on September 23, 1976, is vacated and set aside and the cause is remanded for further pro-

ceedings not inconsistent with this opinion. Inasmuch as this action will have the effect of restoring the status as it existed prior to the September 23, 1976, order, including the viability of the injunction entered by the district court on August 26, 1976, the injunction entered by this court will be dissolved upon remand. By our disposition of this appeal we do not intend in any way to curtail the flexibility that we would expect the district court judge to exercise in utilizing the various procedural devices designed to expedite the ultimate completion of this litigation, although at this point we have some difficulty in discerning any salutary purposes in further bouncing back and forth of the causes of action.

REVERSED and REMANDED.

---

11. Rule 1, Fed.R.Civ.P., in pertinent part, provides:

   These rules govern the procedure in the United States district courts in all suits of a civil nature . . . [and] shall be construed to secure the just, speedy, and inexpensive determination of every action.