**GRUMMAN SYSTEMS SUPPORT CORP., Plaintiff,**

v.

**DATA GENERAL CORP., et al., Defendants.**

**No. 88–3342–FMS.**

United States District Court, N.D. California.

Dec. 29, 1988.

Ronald S. Katz, Kurt E. Wilson, Coudert Bros., San Francisco, Cal., for plaintiff.

Richard L. Goff, Charles F. Robinson, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Robert S. Frank, Jr., Kevin P. Light, Choate, Hall & Stewart, Boston, Mass., for defendants.

ORDER

FERN M. SMITH, District Judge.

This matter came on regularly by defendant Data General's (DG) motion to dismiss, to stay or to transfer this action to the District of Massachusetts. The Court has considered the submissions by the parties and has heard extensive oral argument. For the reasons set forth below, the Court grants the motion to dismiss, without prejudice, so that the action may properly be brought as a counterclaim to DG's first-

filed action in the District of Massachusetts.

## BACKGROUND

Defendant Data General has a valuable computer program called ADEX. DG has a copyright on the program. Grumman, a competitor, allegedly copied ADEX without authorization. DG sued Grumman in the District of Massachusetts (Mass. action) for copyright infringement and related causes of action.

The day after its motion to dismiss in Mass. was denied, Grumman sued DG in California state court for violation of the Cartwright Act, the California equivalent of the Sherman Antitrust Act. The California suit was based, factually, on the behavior of DG with respect to its ADEX product. DG removed the California antitrust action to this Court.

DG then made this motion to dismiss or stay this action asserting that it is a compulsory counterclaim to the Mass. action or to transfer this action to the District of Massachusetts under 28 U.S.C. 1404 for the convenience of the parties and witnesses. Grumman has since amended its complaint to add two new defendants and a number of new allegations of predatory practices assertedly in violation of antitrust laws. DG's behavior with respect to the ADEX product continues to be the core of the amended complaint's allegations, but Grumman now states additional allegations that are wholly apart from ADEX matters.

DG asserts that this action is a compulsory counterclaim to the Mass. action under Fed.R.Civ.P. 13(a) and, therefore, its claims must be brought in the Mass. action or be forever waived. Therefore, DG moves for (1) dismissal of this action without prejudice so that Grumman may bring it in Massachusetts or (2) for a stay of this action or (3) for transfer of this action to Massachusetts pursuant to 28 U.S.C. 1404.

DG has moved for preliminary injunction in the Massachusetts action. Grumman's brief opposing the injunction defended on the grounds that DG's behavior with respect to its ADEX product was an attempt to monopolize, to stifle competition in the relevant market and, thus, constituted antitrust violations. Certain of the issues raised here are already being litigated in the Mass. action.

The litigation became even more tortuous, however, when Grumman amended its complaint here to add two additional defendants (the "AMI defendants") as alleged antitrust co-conspirators of DG. The Massachusetts court probably has no personal jurisdiction over the AMI defendants. Recently, two other plaintiffs (both using Grumman's counsel) have filed similar antitrust suits against DG here in the Northern District of California. *Computer Product & Repairs, Inc. v. Data General Corp.,* No. C–88–4635–SC (N.D.Cal.1988); *NPA Systems of California v. Data General Corp.,* No. C–88–4179–WHO (N.D.Cal. 1988).

## DISCUSSION

Fed.R.Civ.P. 13(a) is concerned with the danger of inconsistent adjudication and with judicial economy. *Pochiro v. Prudential Ins. Co.,* 827 F.2d 1246 (9th Cir.1987); *Albright v. Gates,* 362 F.2d 928 (9th Cir. 1966). Rule 13(a) states that "a pleading shall state as a counterclaim any claim ... the pleader has against any opposing party if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

In addition to the "same transaction or occurrence" standard of the Rule itself, courts have applied a "logical relationship" test to determine if two actions at issue are sufficiently identical for the second to be a compulsory counterclaim to the first. *See Pochiro,* 827 F.2d at 1249 [1]; 6 Wright & Miller *Federal Practice & Procedure* Sec-

---

**1.** The *Pochiro* court, while technically applying Arizona law, relied almost exclusively on federal law for its decision because the Arizona law on the subject was sparse, and Arizona law itself gives great weight to federal interpretations of the civil procedure rules. 827 F.2d at 1249 & n. 7.

tion 1410, p. 46ff. The test is a "flexible" one taking into account all of the circumstances in light of the purposes of Rule 13(a). *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926); *Warshawsky & Co. v. Arcata Nat. Corp.*, 552 F.2d 1257 (7th Cir.1977).

As a threshold matter, it should be made clear that similarity between the legal theories of recovery advanced in the respective actions is largely irrelevant to Rule 13(a) analysis. The Rule itself refers to similarities among the transactions or occurrences the make up the factual bases of the lawsuits. Fed.R.Civ.P. 13(a). The few older federal cases giving weight to similarity of issues have been criticized and are in the minority. *See Wright & Miller*, supra, at p. 44. The test in this circuit is "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro*, 827 F.2d at 1249 (citation omitted).

The *Pochiro* court considered whether "the facts necessary to prove the two claims substantially overlap, [whether] the collateral estoppel effect of ... the first action would preclude [matters in the second action]." *Id.* at 1251. Although in *Pochiro* the court found that the allegations of the second action went beyond the facts appearing in the first action and seemed "a bit removed" from the allegations of the first action, *id.* at 1250, the court found that certain core facts were common to and "inextricably intertwined with" both actions. *Id.*

It is clear from Grumman's recent submissions in the Mass. action, as well as from the pleadings of the two actions, that there is sufficient overlap between the factual underpinnings of the two actions to save a great deal of judicial resources if the California action could be litigated with the Mass. action. In the Mass. action, Grumman's Answer contains an affirmative defense relating to DG's alleged monopolization by copyright misuse. Grumman's opposition briefs to DG's motion for preliminary injunction in the Mass. action argue forcefully from that affirmative defense and indeed recite the substance of the allegations that appear in this action. Later-filed claims are eligible for compulsory counterclaim treatment as defenses to the first-filed action if all other Rule 13(a) criteria are met. *See, e.g., Minnetonka, Inc. v. Sani–Fresh Int'l, Inc.*, 103 F.R.D. 377 (D.Minn.1984); *USM Corp. v. SPS Technologies, Inc.*, 102 F.R.D. 167 (N.D.Ill. 1984).

However, Grumman does assert antitrust monopolization claims against DG and the AMI defendants that are unique to the California action and in which some acts alleged have nothing to do with ADEX. Rather, those claims involve the more generic allegations of conspiracy to monopolize, such as applying improper pressure to DG's customers so that they would to refuse to deal with Grumman.

The central issue is whether there is a logical relationship between the claims in the two actions sufficient to precipitate Rule 13(a) concerns. The Court holds there is.

In this case, as in *Pochiro* which this Court takes as controlling, the "facts underlying the [second-filed action] revolve around" the same occurrences as do the facts of the first action. *Id.* at 1250. In *Pochiro*, it was the plaintiff's unlawful use of confidential information. *Id.* Here, it is Grumman's alleged use of a copyrighted diagnostic computer program. In *Pochiro*, as here, this sort of alleged unauthorized use of non-public proprietary information gave rise to allegations in the second-filed action of unlawful restraint of trade claims. In *Pochiro*, plaintiff alleged facts that were not involved in the first action, just as Grumman has alleged additional facts going to its monopolization claim. Since *Albright*, the Ninth Circuit has taken the expansive view of Rule 13(a) that whether the facts "are not precisely identical or [whether] the counterclaim embraces additional allegations ... does not matter." *Moore*, 46 S.Ct. at 371. In light of these circumstances, the conclusion that this ac-

tion is a compulsory counterclaim in the Mass. action seems inescapable.

Grumman relies heavily on three cases. In *Mead Data Central v. West Pub. Co.,* 679 F.Supp. 1455 (S.D.Oh.1987), the situation was very similar to this one. A copyright action in Minn., and a later-filed antitrust action in Ohio were followed by a 13(a) motion. The court held that the antitrust allegations were not compulsory counterclaims. *Id.* at 1461. Although this Court recognizes the similarity between the *Mead* case and the case at bar, the Court can not agree with the analysis of the *Mead* court. The *Mead* court relied on the Sixth Circuit standard for Rule 13(a) as set forth in *United States v. Southern Construction Co.,* 293 F.2d 493, 500 (6th Cir. 1961), *rev'd in part on other grounds,* 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962) and *Maddox v. Kentucky Finance Co.,* 736 F.2d 380, 383 (6th Cir.1984). This standard, at least as applied by the *Mead* court, differs from the Ninth Circuit standard in several ways.

First, it accords primary weight to the similarity or dissimilarity of the *legal* issues involved in the two actions. *Mead,* 679 F.Supp. at 1458, 1461 (first factor in court's analysis); *Maddox,* 736 F.2d at 383. In contrast, this circuit has recognized that legal dissimilarities are often the case in contested Rule 13(a) motions and that the factual underpinnings of the complaint are more properly the focus of Rule 13(a) analysis.

Second, the *Mead* court correctly notes that "judicial economy and efficiency are important considerations in determining whether a particular claim constitutes a compulsory counterclaim." *Mead,* 679 F.Supp. at 1462. But its application of this principle is confusing:

> In this case, defendant West argues that judicial economy requires that the two Complaints be litigated in one forum. This Court cannot agree. Discovery in the Minnesota copyright action is nearly complete. Even if this Court were to transfer the case at bar, as both sides want the Minnesota copyright case to go forward, the chance of the two actions

being consolidated is virtually nil. The Court does not dispute West's claim that after two years of litigation, Judge Rosenbaum, Magistrate Cudd, and Special Master Younger of the District Court for the District of Minnesota are intimately familiar with the law of copyright and the law of unfair competition and misrepresentation. Nor does the Court doubt that those individuals are intimately familiar with the facts of the Minnesota copyright action.

The *Mead* court then went on to conclude that "judicial economy and efficiency would [not] be served by hearing the two claims together." *Id.* at 1462. The *Mead* court apparently took the view that, if it were procedurally feasible to consolidate the two actions, this would somehow lend support to holding that the later-filed claims are compulsory counterclaims in a first-filed action. This view would lead to the conclusion that, if the first-filed action had reached judgment or were at an advanced stage of litigation, the later-filed action should not be held to be a compulsory counterclaim to the first-filed action.

This view is necessarily at odds with the purposes and the mandatory operation of Rule 13(a). Under the *Mead* court's view, litigants would be encouraged to wait until the first-filed proceedings are over to file a second action alleging what would have been compulsory counterclaims to the first action. Under *Mead,* this tactic would increase a litigant's chances of surviving a Rule 13(a) motion to dismiss. Once the first-filed action is already too far along for judicial economies to be served by forcing the later-filed action to be litigated in the same proceeding, the later-action plaintiff is permitted to open up a second "front" of litigation—simply by waiting patiently. Worse yet, what if the first-filed action were over? No judicial economies whatsoever would be served by holding that the later-filed action was a compulsory counterclaim. Yet, as Grumman concedes, that is the situation in a majority of the Rule 13(a) cases.

The better and prevailing view is that an action is either sufficiently related to an-

other action to meet the compulsory counterclaim test or it is not. The status of the first-filed action is irrelevant. To hold otherwise would be a considerable if not fatal blow to Rule 13(a) and the policies it embodies. A close reading of *Mead* reveals that the court seems to have imported into its Rule 13(a) analysis concepts ordinarily involved in transfer of venue motions under 28 U.S.C. 1404. *Mead,* 679 F.Supp. at 1457–62. Unlike transfer under Section 1404, Rule 13(a) does not involve notions of convenience, discretion and *prospective* judicial economy. Rather, Rule 13(a) involves only the question of whether there is a sufficient logical nexus between the subject actions. There is no judicial discretion involved. *See Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1058 & n. 1 (3d Cir.1978). Any notions of judicial economy are merely retrospective—i.e., an aid in determining the extent to which the actions are related by testing whether judicial economies *would have been* served had the actions been adjudicated in one proceeding.

Finally, in *Mead,* there seemed to have been appreciably less factual overlap between the copyright and antitrust claims than there is here. In *Mead,* the court found little or no overlapping evidence between the two cases. *Id.* at 1462 & n. 5. The antitrust claims in *Mead* involved issues that extended far beyond the subject matter of the Minnesota copyright issues. They included monopolization through predatory pricing and anticompetitive acquisition policies.[2] Here, the monopolization allegation does not extend as far beyond the ADEX issues. Each of the "non-ADEX" allegations, on which Grumman so heavily relies in opposing this motion, is identical. They all allege that DG threatened its business associates not to deal with Grumman. Thus, the percentage of this action that overlaps the Mass. action is greater than the percentage of the *Mead* action that overlapped the Minnesota copyright action.

In *Republic Health Corp. v. Lifemark Hosp. of Fla.,* 755 F.2d 1453 (11th Cir. 1985), the Eleventh Circuit explicitly stated that the later-filed complaint "could not have been asserted as a compulsory counterclaim in the prior case." *Id.* at 1454. In *Republic,* the first-filed action was in Bankruptcy court. The later-filed action was for alleged antitrust violations. "Therefore, whether the Bankruptcy Court had the ability to hear [the later-filed] claim is not at all certain." *Id.* at 1455. There is no such impediment in this case. Neither party denies that Grumman's claims can be heard by the District Court of Massachusetts.

In *Mercoid Corp. v. Mid–Continent Co.,* 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), the Supreme Court wrote broad sweeping dicta that seemed to state that antitrust claims can never be compulsory counterclaims under Rule 13(a), that antitrust claims were exempt from the operation of Rule 13(a). The case was immediately criticized by the commentators and its holding eroded by the lower courts with time. *E.g., Martino v. McDonald's System, Inc.,* 432 F.Supp. 499 (N.D.Ill.1977) (many courts have now limited the *Mercoid* dicta to cases involving patent misuse; Sherman Act claims can be 13(a) compulsory counterclaims); *Burlington Indus. v. Milliken & Co.,* 690 F.2d 380 (4th Cir.1982) ("the *Mercoid* decision has been read narrowly ... and its continuing validity is open to serious question"). Profs. Wright and Miller are to the same effect. *See* Wright & Miller, *supra,* at Sec. 1412, pp. 61–64. Whatever the continued application of *Mercoid's* exception in the patent litigation context, it is clear at this point that there is no such general exception to the operation of Rule 13(a) and no case decided in the last twenty years holds to the contrary.

### AMI Defendants

■ Grumman argues that the existence of the AMI defendants takes this case out of Rule 13(a) because of the Rule's excep-

---

**2.** Indeed, Mead had brought a similar antitrust suit against West in the Southern District of New York approximately ten years prior but chose to dismiss the action voluntarily when the court granted West's motion to transfer the action to the District of Minnesota. *Mead Data Central, Inc. v. West Publishing Co.,* 3–78 Civ. 142 (D.Minn.1978).

tion for situations where the court in the first filed action can not acquire personal jurisdiction over would-be counterclaim defendants.

If this were the law, it would be easy to "end-run" Rule 13(a). It is not the law. DG itself is subject to jurisdiction in Massachusetts; therefore, Grumman's claims against DG can be brought there. The AMI defendants are alleged to be antitrust co-conspirators of DG. As such, they are not indispensable parties to the antitrust action under Rule 19. 7 Wright, Miller & Kane Section 1623, pp. 346–48; *Lawlor v. Nat. Screen Serv. Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). Rather, as with joint tortfeasors, an antitrust action may proceed against any combination of co-conspirators.

*Two New Identical Cases Against DG*

Grumman argues that because DG will have to defend two identical antitrust lawsuits, there is no reason to make Grumman go to Massachusetts to litigate its antitrust claim. The argument makes little sense in light of the objective of Rule 13(a)—judicial economy. It would save considerable judicial effort if Grumman were to litigate in Massachusetts while the Court here consolidates the two new cases with what remains of this action (Grumman v. AMI defendants) and stays the California proceedings pending the outcome of the Massachusetts litigation. Massachusetts decisions will not be *res judicata*, but they will be helpful in guiding decisions on essentially identical claims, albeit among different parties.

This Court hereby dismisses this action as to DG without prejudice, but permits the action to go forward against the AMI defendants subject to any motions to stay this action. Grumman shall then be free to assert these claims as counterclaims in the Mass. action. In view of this ruling, it shall be unnecessary for the Court to reach the issues involved in DG's motion to transfer this action pursuant to 28 U.S.C. 1404. This action shall be related to the actions bearing docket numbers C–88–4635–SC and C–88–4719–WHO for all purposes.

SO ORDERED.