HARLEY–DAVIDSON MOTOR COMPA-
NY, a corporation, and H–D Michigan,
Inc., a corporation, Plaintiffs,

v.

CHROME SPECIALTIES, INC.,
a corporation, Defendant.

No. 96–C–925.

United States District Court,
E.D. Wisconsin.

May 22, 1997.

Scott W. Hansen, Dean E. Mabie, Christo-
pher P. Banaszak, Reinhart, Boerner, Van
Deuren, Norris & Rieselbach, S.C., Milwau-
kee, WI, for Plaintiffs.

Max Ciccarelli, Felsman, Bradley, Gunter
& Dillon, L.L.P., Fort Worth, TX, Gary Ess-
man, Andrus, Sceales, Starke & Sawall, Mil-
waukee, WI, for Defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This trademark infringement action was
originally assigned to Magistrate Judge Wil-
liam E. Callahan. On January 13, 1997, the
plaintiffs, Harley–Davidson Motor Company
and H–D Michigan, Inc. [collectively "Har-
ley–Davidson"] filed a "Motion for a Prelimi-
nary or Permanent Injunction" and asked
that the motion be referred to a district
judge for resolution because the parties had
not consented to magistrate judge jurisdic-
tion. The matter was then assigned to this

district court for purposes of addressing the application for injunctive relief.

## I. PROCEDURAL BACKGROUND

Harley–Davidson, a Wisconsin corporation which manufactures motorcycles, filed this action on August 16, 1996, against the defendant, Chrome Specialties, Inc. ["CSI"], a Texas corporation which manufactures and sells motorcycle parts for use, in part, on Harley–Davidson motorcycles and clothing for motorcycle enthusiasts. According to the allegations of the complaint, CSI infringed Harley–Davidson's trademarks and engaged in unfair competition and trademark dilution in violation of federal trademark laws. The complaint also contains a claim under Wisconsin law that CSI misappropriated Harley–Davidson's trademarks and trade dress.

On October 10, 1996, CSI filed its answer and counterclaims in the above-captioned action. On the same day, CSI commenced an action in Texas state court against Harley–Davidson Motor Company—one of the plaintiffs in the instant trademark action—and two of its Texas dealerships. Although CSI did not name H–D Michigan, Inc.—the other plaintiff in this action—as a defendant in its antitrust action, I will refer to the corporate defendant in the Texas action as "Harley–Davidson" in an effort to avoid confusion.

The complaint in the Texas action alleges that Harley–Davidson violated Texas antitrust laws by conspiring with its dealers to monopolize or unlawfully restrain trade and by selling its goods to dealers on the condition that the purchasers not use or deal in the goods of a competitor. Part of the relief sought by CSI in the Texas state court action is an injunction prohibiting Harley–Davidson from engaging in anti-competitive and monopolistic business practices including proceeding with its alleged frivolous trademark litigation against CSI. (Yager Aff. Tab A. Texas Petition.)

Harley-Davidson removed the Texas action from state court to the United States district court for the northern district of Texas on November 27, 1996. CSI filed a motion to remand the Texas action to state court; such motion is currently pending before the federal court in Texas. In addition, on December 2, 1996, Harley–Davidson filed a motion in the Texas federal court to dismiss or in the alternative to transfer the Texas action to this court for consolidation with the instant trademark action. The federal court in Texas has stayed briefing on the motion to dismiss or to transfer venue pending resolution of CSI's motion to remand. (Yager Aff. Tab I.)

## II. ARGUMENT

In its motion for injunctive relief, Harley–Davidson seeks an order prohibiting CSI from further prosecution of its antitrust lawsuit except as compulsory counterclaims in this trademark action. Harley–Davidson argues that injunctive relief is warranted for three reasons: (1) CSI's claims in the Texas action are logically related to the claims advanced in this trademark dispute such that the claims in the Texas action should have been raised as compulsory counterclaims in the instant action under Rule 13(a), Federal Rules of Civil Procedure; (2) under the "first-filed" rule, a district court may enjoin "subsequent prosecution" of an action in another federal court involving the same parties and same issues which are already pending before that court; and (3) an order granting the relief sought by CSI in the Texas action would directly interfere with this court's ability to adjudicate the instant case.

The court of appeals for the seventh circuit has held that where an action is filed subsequent to another suit in a different forum the court in the first-filed action may enjoin the subsequent suit if (1) the two suits involve the same parties and identical issues, or (2) the action sought to be enjoined is a compulsory counterclaim to the first-filed action. *See Warshawsky & Co. v. Arcata National Corp.,* 552 F.2d 1257 (7th Cir.1977); *Martin v. Graybar Electric Co.,* 266 F.2d 202 (7th Cir.1959).

Compulsory counterclaims are governed by Rule 13(a), Federal Rules of Civil Procedure, which provides, in relevant part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any op-

posing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

The policy underlying Rule 13(a), Federal Rules of Civil Procedure, is to "prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Warshawsky & Co.,* 552 F.2d at 1261 (citing *Southern Construction Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962)). In order to further this policy, courts should interpret the words "transaction or occurrence" liberally and recognize that a transaction may consist of a series of many occurrences which are logically related. *Warshawsky,* 552 F.2d at 1261 (citing *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926)).

■ In my opinion, the antitrust claims involved in the Texas action are compulsory counterclaims to the trademark claims made against CSI in the present action. The crux of Harley–Davidson's complaint in the instant trademark action is its contention that CSI, with specific intent to confuse the purchasing public and to trade on Harley–Davidson's trade identity and goodwill, has unjustly enriched itself and injured Harley–Davidson by using unauthorized copies and imitations of Harley–Davidson's federally registered and common-law trademarks and trade dress. At the heart of CSI's Texas antitrust action is its contention that Harley–Davidson violated Texas antitrust law by (1) seeking to enforce its trademarks through "frivolous" lawsuits, including the present trademark action, (2) coercing its dealers not to deal with competitors of Harley–Davidson, and (3) using the shortage of Harley–Davidson's motorcycles to control its prices.

The allegations of CSI's pleading in the Texas action demonstrates that Harley–Davidson's trademark litigation is a key issue in the Texas antitrust action; the pleading in the antitrust action provides, in part (emphasis added):

Time and again, Harley dealers have been threatened with the loss of their valuable dealerships or reduced allocations of new, "heavy-weight" motorcycles when they have supplied after-market competitors with motorcycles or [parts and accessories]. *Similarly Harley has time and again brought frivolous. yet ruinous "trade-mark" claims against small after-market competitors. This litigation has either forced these competitors to cease operations or become so-called "Harley licensees" which agree to utilize only [parts and accessories] which Harley manufactures or distributes.* In either case, competitive [parts and accessories] suppliers— such as plaintiff—have been forced from substantial market demand for their product with devastating impact on their business and property.

(Yager Decl. Ex. A, Texas Petition 411(c)). In addition, CSI alleges in its pleading that (emphasis added):

*Harley has persistently instituted frivolous trademark litigation. including an action against CSI. which assert ludicrous claims of trademark ownership.* These actions are designed to intimidate the putative defendants, and coerce these defendants into either accepting an anti-competitive license from Harley, or face being forced from business due to the costs and expense of litigation.

(Yager Decl. Ex. A, Texas Petition ¶ 11(e).)

It is true that the claims advanced by CSI in its antitrust action go beyond the issues raised in the trademark action. Nevertheless, that alone is not determinative where, as here, certain core facts are common and material to both actions. *See Pochiro v. Prudential Ins. Co. of America,* 827 F.2d 1246, 1250 (9th Cir.1987); *Grumman Systems Support Corp. v. Data General Corp.,* 125 F.R.D. 160, 162 (N.D.Cal.1988). The two actions will involve substantial duplicative discovery if allowed to proceed separately. (Hansen Aff. ¶ 2, Brief in Support of Plaintiff's Opposition to CSI's Motion for Protective Order.)

That CSI's antitrust claims have a "logical relationship" to Harley–Davidson's trademark claim is also evidenced by the fact that the relief CSI requests in the Texas action—

an injunction prohibiting Harley–Davidson from continuing its allegedly anti-competitive activities including its alleged "frivolous" trademark litigation against CSI—directly affects the trademark action presently before me.

CSI contends that its claims in the Texas action are not compulsory counterclaims to the instant trademark action because they would have no bearing on Harley–Davidson's trademark claims, and the legal basis for recovery in the two actions is different. CSI's argument is an attempt to invoke the "identical issues" and "res judicata" tests which the court of appeals for the seventh circuit have found to be "unduly restrictive" when conducting the compulsory counterclaim analysis. *Warshawsky*, 552 F.2d at 1263. Moreover, a finding in this court that Harley–Davidson's trademarks are valid and enforceable is relevant to CSI's antitrust claim to the extent that CSI claims that Harley–Davidson's trademark litigation against CSI is frivolous. By the same token, a finding by the Texas court that Harley–Davidson's trademark litigation against CSI is frivolous is likely to impact this court's ability independently to resolve the pending trademark enforcement action.

■ CSI also argues that its antitrust claims are not compulsory counterclaims to Harley–Davidson's trademark action because the jurisdictional requirements of Rule 13(a) are not met. Specifically, CSI maintains that this court does not have personal jurisdiction over the dealer-defendants in the Texas action. I find this argument unpersuasive. Rule 13(a) provides that a counterclaim is "compulsory" where the claim "does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The Federal Rules of Civil Procedure do not define when a third party is "required for adjudication" for purposes of a counterclaim under Rule 13(a). In my opinion, Rule 19(a), Federal Rules of Civil Procedure, which governs "indispensable" parties, is instructive. Under Rule 19(a), a party is indispensable if "in that person's absence complete relief cannot be accorded among those already parties."

The dealer-defendants over which CSI claims this court does not have personal jurisdiction are alleged antitrust co-conspirators of Harley–Davidson. It is well established that co-conspirators like the dealer-defendants in the Texas action are not indispensable parties under Rule 19(a). *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 329–330, 75 S.Ct. 865, 869, 99 L.Ed. 1122 (1955); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1623, pp. 346–47 (1986). Thus, I do not believe that the presence of the dealer-defendants in the Texas action violates the jurisdictional requirement of Rule 13(a).

■ Equally without merit is CSI's contention that Harley–Davidson has foreclosed its right to seek injunctive relief from this court by first presenting the same issues to the Texas court via its motion to dismiss or to transfer the Texas action to Wisconsin. In support of its argument, CSI relies solely on the decision of the court of appeals for the fourth circuit in *Ellicott Machine Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178 (4th Cir.1974). In that case, Ellicott filed a complaint against Modern Welding in the district court for the district of Maryland. Less than one week later, Modern Welding filed a separate but factually related action in a Kentucky state court. Ellicott removed the later-filed action from the Kentucky state court to federal court in the western district of Kentucky where it also filed a motion to quash service of process or to transfer the case to the federal court in Maryland. Those motions were denied by the Kentucky federal court.

Ellicott then filed a motion in the *Maryland* federal court seeking to enjoin Modern Welding from further prosecuting its Kentucky action. The district court for the district of Maryland granted that motion.

On appeal, the court of appeals for the fourth circuit reversed, holding that the motion to enjoin filed by Ellicott in the Maryland federal court amounted to an appeal of the Kentucky federal court's nonappealable order denying Ellicott's motion to quash or transfer venue. *Ellicott*, 502 F.2d at 180–181. The court of appeals for the fourth

circuit reasoned that Ellicott should be bound by the decision of the Kentucky federal court because its decision on a motion for change of venue is not appealable as a final judgment. *Id.* The court also concluded that principles of comity and judicial economy required the same result. *Id.* at 181.

I find the *Ellicott* decision inapplicable to the case at hand. Unlike the Kentucky court in *Ellicott,* the Texas court has not ruled on Harley–Davidson's motion to dismiss or transfer venue. In fact, the Texas court has suspended briefing on that motion pending its resolution of CSI's motion to remand the action. Thus, unlike the situation in *Ellicott,* Harley–Davidson's motion to enjoin CSI from further prosecuting its Texas antitrust action does not amount to an appeal of a nonappealable order of the Texas federal court.

■ In sum, I conclude that the antitrust claims against Harley–Davidson in the Texas action are compulsory counterclaims to the trademark claims in the instant action. As such, this court has the power to enjoin CSI's pursuit of its Texas action against Harley–Davidson. *Warshawsky,* 552 F.2d at 1263; *W.A. Krueger v. Ottenheimer Publishers, Inc.,* 458 F.Supp. 1082, 1085–1086 (E.D.Wis. 1978) (Gordon, J.). Nevertheless, that conclusion does not automatically mean that an injunction should be issued. *Warshawsky,* 552 F.2d at 1263; *W.A. Krueger,* 458 F.Supp. at 1085–1086.

In determining whether an injunction should issue in these circumstances, a court is to consider the goal underlying Rule 13(a) of preventing multiplicity of actions. *Id.* In addition, the court should be mindful of the general principle that where two actions arising out of the same transaction are filed in different forums, the party filing later in time should be enjoined from further prosecution of its suit, unless unusual circumstances warrant otherwise. *Warshawsky,* 552 F.2d at 1263; *Martin,* 266 F.2d at 204.

Although transferring this action to Texas would further the goals of Rule 13(a) as well as trying all claims in this court, a motion to transfer venue is not before me. Further, CSI has not sufficiently identified any unusual circumstances justifying departure from the general principle that the party filing later in time should be enjoined from further prosecution of its action.

Accordingly, I will grant Harley–Davidson's motion to enjoin CSI from proceeding with its action against Harley–Davidson in the Texas federal court. It appears that the Texas federal court has not, as yet, ruled on CSI's motion to remand the antitrust action to Texas state court. Hence, I need not address Harley–Davidson's additional contention that this court also has the authority to enjoin CSI from proceeding in Texas state court.

Therefore, IT IS ORDERED that Harley–Davidson's "Motion for a Preliminary or Permanent Injunction" be and hereby is granted to the extent that CSI is preliminarily enjoined from further prosecuting its antitrust suit against Harley–Davidson presently pending in the United States district court for the northern district of Texas.

IT IS ALSO ORDERED that the clerk of this court be and hereby is directed to transmit a certified copy of this decision and order to the clerk of court for the United States district court for the northern district of Texas.